1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

PATSY L. NASH,

11

Plaintiff,                          No. CIV S-05-2034 DAD

12

vs.

13

MICHAEL J. ASTRUE,                          ORDER
Commissioner of Social Security,[1]

14

Defendant.

15

_____/

16

This social security action was submitted to the court, without oral argument, for

17

ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18

judgment.  For the reasons explained below, the decision of the Commissioner of Social Security

19

(Commissioner) is reversed and this matter is remanded for further proceedings.

20

**PROCEDURAL BACKGROUND**

21

Plaintiff Patsy L. Nash applied for Social Security Disability Insurance benefits

22

under Title II of the Social Security Act (the Act) in March 2003.  (Transcript (Tr.) at 41-45.)

23

The Commissioner denied plaintiff's application initially and on reconsideration.  (Tr. at 23-31.)

24

25

26

[1]  On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.
Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ.
P. 25(d)(1).

1   Pursuant to plaintiff's request, a hearing was held before an administrative law judge (ALJ) on

2   July 6, 2004, at which time plaintiff was represented by counsel.  (Tr. at 17-20, 32-36, 347-89.)

3   In a decision issued on August 26, 2004, the ALJ determined that plaintiff was not disabled.  (Tr.

4   at 9-16.)  The ALJ entered the following findings:

> 1.  The claimant met the disability insured status requirements of the Act on November 11, 2002, the date the claimant stated she became unable to work, and continues to meet them through the date of this decision.
>
> 2.  The claimant has not engaged in substantial gainful activity since October 11, 2002.
>
> 3.  The medical evidence establishes that the claimant has "severe" shoulder and knee arthritis, asthma, and obesity, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 4.  The claimant's testimony regarding her inability for more than brief periods of sitting, standing, walking, or lifting greater than about 5 pounds or severe deficits in concentration, ongoing panic attacks, or other impairment-based problems that would prevent her from performing a full range of "light" work, cannot be credited for the above-stated reasons.
>
> 5.  The claimant has the residual functional capacity to perform work-related activities except for work involving lifting and carrying more than 10 pounds frequently or 20 pounds occasionally (20 CFR § 404.1545).
>
> 6.  The claimant's past relevant work as a data entry clerk did not require the performance of work-related activities precluded by the above limitation(s) (20 CFR § 404.1565).
>
> 7.  The claimant's impairments do not prevent the claimant from performing her past relevant work.
>
> 8.  The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(e)).

24   (Tr. at 15-16.)  The Appeals Council declined review of the ALJ's decision on August 4, 2005.

25   (Tr. at 5-7.)  Plaintiff then sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the

26   complaint in this action on October 10, 2005.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances several arguments in her motion for summary judgment.  First, plaintiff asserts that the ALJ failed to consider all of her impairments at the second step of the sequential evaluation.  Second, plaintiff argues that the ALJ erred in failing to credit the opinions of plaintiff's treating physicians.  Third, plaintiff maintains that the ALJ improperly failed to credit her testimony and statements of third party witnesses.  Fourth, plaintiff asserts that the ALJ failed to fully develop the record.  The court addresses plaintiff's arguments below.

Turning to plaintiff's first argument, the court begins by noting that at step two of the sequential evaluation the ALJ must determine if the claimant has a medically severe impairment or combination of impairments.  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).  The purpose of step two of the sequential evaluation is merely to identify claimants whose medical impairments are so slight that it is unlikely the claimants would be disabled even if age, education, and experience were taken into account.

4

1   Yuckert, 482 U.S. at 153.  "An impairment or combination of impairments can be found 'not

2   severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

3   effect on an individual's ability to work.'"  Smolen, 80 F.3d at 1290 (citations omitted).  See also

4   20 C.F.R. § 404.1521(a).

5           Here, the ALJ noted plaintiff's claim of anxiety and depressive disorders.  (Tr. at

6   12.)  The ALJ described extensive evidence relevant to plaintiff's complaints of anxiety and

7   depression, including:  UC Davis Medical Group records indicating plaintiff had been treated for

8   a variety of complaints, including depression and anxiety, since spring of 2000; an April 2003

9   report indicating that plaintiff's anxiety and depression were better with psychotropic

10  medications; a June 2003 consultative medical examination at which plaintiff reported

11  depression and anxiety; a June 2003 consultative psychiatric examination at which plaintiff was

12  found to have a mildly depressed mood and depressed affect, as well as generalized anxiety

13  disorder and adjustment disorder with mixed emotional features that caused slight limitations in

14  work-related functional areas; plaintiff's complaint in March 2004 of trouble sleeping and a

15  reaction to medications, a resulting assessment of multiple conditions, including depression, and

16  it was noted that she was taking Zoloft for depression; a June 2004 referral to a therapist who

17  diagnosed bipolar and major depressive disorder.  (Tr. at 12-13 (citing Exs. 1F, 2F, 3F, 6F, 14F,

18  16F).)

19          At step two of the sequential evaluation, the ALJ found that plaintiff "has 'severe'

20  shoulder and knee arthritis, asthma, and obesity."  (Tr. 15.)  The ALJ did not identify any mental

21  impairments as severe impairments.  The June 29, 2004 diagnoses of bipolar and major

22  depressive disorder by Dr. Stephen F. Grinstead were discounted by the ALJ on the ground that

23  they "were offered by a marriage and family therapist who is not a psychiatrist or psychologist

24  and therefore not an acceptable medical source."[2]  (Tr. at 13.)  The June 25, 2004 assessment of

25  _____

26      [2]  Dr. Grinstead has a doctorate in addictive disorders and is a licensed marriage and
    family therapist.  (Tr. at 279-92.)

1  Dr. Frances Broddrick, reflecting diagnoses of bipolar and panic attacks/anxiety disorder by staff

2  in the psychiatry department, was given no weight by the ALJ because Dr. Broddrick "is a family

3  medicine specialist but not a specialist in any of the mental health disciplines."[3]  (Id.)  The ALJ

4  stated that "although [Dr. Broddrick] may have prescribed some medication for the claimant's

5  depression and other disorders the physician's proffered psychiatric diagnoses and accompanying

6  medical source statement appear to be beyond her level of expertise" and should be given no

7  weight.  (Id.)  The ALJ found that the only report from a psychiatrist is the June 2003

8  consultant's report by Bradley Daigle, M.D., who found that plaintiff "had mild anxiety and

9  adjustment disorders causing no more than slight limitations in the various functional domains."[4]

10 (Id.)  The ALJ gave "considerable weight" to Dr. Daigle's report on the ground that it was

11 corroborated by the state agency's reviewing medical source, who was also a psychiatrist.  (Id.)

12      The Ninth Circuit has held that medical evidence from a physician who is not a

13 mental health specialist "constitutes 'competent psychiatric evidence' and may not be discredited

14 on the ground that he is not a board certified psychiatrist."  Lester v. Chater, 81 F.3d 821, 833

15 (9th Cir. 1995).  "Indeed, the treating physician's opinion as to the combined impact of the

16 claimant's limitations–both physical and mental–is entitled to special weight."  Id.

17      Thus, the ALJ erred when he decided not to credit Dr. Broddrick's June 25, 2004

18 assessment of plaintiff's ability to perform work-related activities.  Dr. Broddrick indicated that

19 plaintiff suffers from confusion, forgets easily, is especially confused with directions, and finds it

20 hard to remain focused.  (Tr. at 276.)  In Dr. Broddrick's opinion, plaintiff is not capable of

21 performing the full range of sedentary work, is not able to work an eight-hour day five days a

22 week due to pain and mental disorders, is in constant pain at a level of 6 or 7 on a scale of 10

23

24      [3]  Dr. Broddrick is an M.D. in the Primary Care Network, Family and Community
Medicine, as well as an Assistant Professor at U.C. Davis.  (Tr. at 225, 275-78.)

25

26      [4]  The ALJ cites Dr. Daigle's report as Exhibit 13F/5, 6.  The seven-page report is marked
Exhibit 3F.  (Tr. at 149-55.)

1   even while on pain medication, and is not expected to improve, given that plaintiff's condition

2   was already chronic without showing improvement.  (Tr. at 276-77.)  Dr. Broddrick's opinion

3   shows that plaintiff's mental impairments have more than a minimal effect on her ability to work.

4            The administrative record reflects that other UC Davis physicians previously

5   diagnosed plaintiff as suffering from depression:  Craig S. Ruggles, M.D., in August 2003

6   indicated that plaintiff had been his patient since 1999 and a patient of the office since 1996, that

7   her depression was probably severe enough to keep her from attaining gainful employment, and

8   that, after trying multiple medications, plaintiff was at her best treatment level (tr. at 274); Karna

9   Gocke, M.D., in August 2003, diagnosed plaintiff as suffering from depression and possible

10  bipolar disorder, and noted "Refer to psychiatry" (tr. at 269-70); Aarati Yelamanchili, M.D., in

11  May 2003 made an urgent referral of plaintiff to psychiatry for treatment of possible bipolar

12  disorder (tr. at 268).  The record also reflects that plaintiff was prescribed and took many

13  psychotropic medications, including Paxil, Wellbutrin, Effexor, Lexapro, Klonopin, and Zoloft.

14  (See Tr. at 269, 270, 276.)

15           Dr. Daigle, the consulting psychiatrist whose opinion is relied upon by the ALJ,

16  found plaintiff's mood mildly depressed and her affect tense and depressed.  (Tr. at 152.)  Dr.

17  Daigle's diagnostic impression for Axis I is generalized anxiety disorder with mild agoraphobia,

18  adjustment disorder with mixed emotional features, and marital maladjustment, while his

19  diagnostic impression for Axis IV is psychosocial stressors during the past year rated at 5, i.e.,

20  severe.  (Tr. at 153.)  The ALJ's characterization of Dr. Daigle's diagnosis as one of "mild

21  anxiety and adjustment disorders" is inaccurate, as Dr. Daigle found plaintiff's mood "mildly

22  depressed" and used the word "mild" to describe plaintiff's agoraphobia rather than her either her

23  anxiety disorder or her adjustment disorder.  (Tr. at 152-53.)  Dr. Daigle found that plaintiff

24  demonstrated "a mild-to-moderate degree of psychiatric disturbance."  (Tr. at 154.)  As for

25  functional limitations, Dr. Daigle found plaintiff slightly limited in four of the six categories he

26  evaluated:  ability to relate and interact with supervisors, co-workers and the public; ability to

1   maintain concentration and attention, persistence and pace; ability to associate with day-to-day

2   work activity, including attendance and safety; and ability to adapt to the stresses common to a

3   normal work environment.  (Tr. at 154.)  Dr. Daigle's evaluation did not address issues arising

4   from plaintiff's physical impairments separately or in combination with her mental impairments.

5          The court finds ample evidence in the record that plaintiff suffers from mental

6   impairments that limit her ability to work.  While this evidence may or may not ultimately lead to

7   a finding of disability, it is sufficient to establish that plaintiff's mental impairments have more

8   than a minimal effect on her ability to work.  Thus, the ALJ erred at step two of the sequential

9   evaluation in failing to identify plaintiff's mental impairments as severe and failing to give

10  proper credit to the opinions of plaintiff's treating physicians.  In reaching this conclusion the

11  court is particularly mindful that the step-two inquiry is but "a de minimis screening device to

12  dispose of groundless claims."  Smolen, 80 F.3d at 1290 (citing Yuckert, 482 U.S. at 153-54).

13  See also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001).

14         Remand is required so that the ALJ can apply the proper legal standard at step two

15  of the sequential evaluation process to include all of plaintiff's impairments and then proceed

16  beyond step two with respect to plaintiff's severe mental impairments and the combined effects

17  of all of plaintiff's impairments, both physical and mental.  See Webb v. Barnhart, 433 F.3d 683,

18  688 (9th Cir. 2005) (remanding for further proceedings where "[t]he ALJ should have continued

19  the sequential analysis beyond step two because there was not substantial evidence to show that

20  Webb's claim was 'groundless'").

21         In light of the ALJ's errors at step two, the court finds it unnecessary to address

22  plaintiff's argument that the ALJ failed to credit the testimony of plaintiff and her witnesses.  See

23  Sanchez v. Apfel, 85 F. Supp. 2d 986, 993 n.10 (C.D. Cal. 2000) ("Having concluded that a

24  remand is appropriate because the ALJ erred in ending the sequential evaluation at Step Two,

25  this Court need not consider the issue of plaintiff's credibility.").  On remand, the ALJ will

26  necessarily be required to re-determine plaintiff's residual functional capacity and re-consider

whether plaintiff is capable of performing her past relevant work or any other work in the national economy. The ALJ shall evaluate plaintiff's subjective testimony and the testimony of plaintiff's witnesses regarding the severity of plaintiff's limitations caused by the combined effects of all her impairments and the impact those limitations have upon her. If the ALJ proceeds to step five of the sequential evaluation, the ALJ may well be required to question a vocational expert in a manner that properly takes into account all limitations in plaintiff's abilities to engage in various work-related mental functions. See Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001) (explaining that testimony from a vocational expert was necessary because the claimant suffered from a severe mental impairment); Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997) ("While the ALJ need not include all claimed impairments in his hypotheticals, he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical."). As for plaintiff's argument that the ALJ failed to fully develop the record, any defect in that regard can be cured on remand by submitting additional medical records.

In accordance with the above, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. Defendant's cross-motion for summary judgment is denied; and

3. The decision of the Commissioner of Social Security is reversed, and this case is remanded for rehearing consistent with the analysis set forth herein. See 42 U.S.C. § 405(g), Sentence Four.

DATED: March 19, 2007.

Dale A. Drozd

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/nash2034.order

9